**UNITED STATES BANKRUPTCY COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**

| | | |
|---|---|---|
| CLEVELAND D. BOLER, III | ) | CASE NO. 06-30049 |
| EVELYN D. BOLER | ) | CHAPTER 13 |
|    Debtors, | ) | |
| | ) | |
| RICKY BROWN, SR. | ) | CASE NO. 06-30072 |
| VICKI BROWN | ) | CHAPTER 13 |
|    Debtors, | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF THE OBJECTION TO CONFIRMATION FILED BY THE ALABAMA DEPARTMENT OF HUMAN RESOURCES**

Comes now The State of Alabama, Department of Human Resources (DHR), by and through its attorney of record, Richard G. Moxley, III, and files this Memorandum of Law in support of its objection to confirmation of the debtors' Chapter 13 plan. To the knowledge of this undersigned attorney, this is a case of first impression in the Middle District of Alabama.

**STATEMENT OF FACTS**

The Alabama Department of Human Resources has filed objections to confirmation in these two (2) cases now pending before this Honorable Court. In each case, the proposed plan provides for attorney's fee to be paid first as an administrative claim. In the Boler case, DHR filed an objection to confirmation based on these grounds. Subsequently debtor's attorney amended the plan to pay DHR outside the plan. DHR then objected to confirmation of the amended plan because DHR has not agreed to be paid direct. In the Brown case DHR objected to confirmation stating that a priority claim was filed under 11 USC 507 (a)(1)(a) which specifically states domestic support obligations are to be paid first. This plan has not been amended by debtor's counsel. Both cases were filed after October 17, 2005.

1

**ISSUE ONE**

**WHAT IS THE PRIORITY TO BE GIVEN TO DOMESTIC SUPPORT OBLIGATIONS IN CHAPTER 13 CASES FILED AFTER THE ENACTMENT OF THE BANKRUPTCY ABUSE PREVENTION AND CONSUMER PROTECTION ACT?**

**A. 507(a)**

Section 507(a) of the Bankruptcy Abuse Prevention and Consumer Protection Act (BAPCPA) states that the following expenses and claims have priority in the following order: (1) First, allowed unsecured claims for domestic support obligations... (2) Second, administrative expenses allowed under section 503(b).

BAPCPA has amended this section to give domestic support obligations first position on the list. In contrast, under the former Code, support obligations were listed as number seven (7) in the hierarchy of priorities. The importance in this drastic change lies in the meaning of priorities. Priority determines the order in which claims are paid from property of the bankruptcy estate.

In *Collier on Bankruptcy* @ 507.02 [1], 15th ed. (2006) the following is stated:

> Many bankruptcy cases do not generate sufficient proceeds to pay in full all claims entitled to payment. It became necessary to allocate the insufficient proceeds among the holders of claims in some manner. Were the principles of equality among the creditors the only guiding principle in a bankruptcy case, the allocation of proceeds would be apportioned among all holders of claims in proportion to the amount of their claim. Yet, there

2

are other principles that govern the bankruptcy process and those principles have led to the establishment of a hierarchy by which some claims are entitled to payment before others.

The structure of the Bankruptcy Code reflects the decision by Congress to prefer certain categories of claims over other claims. The preferred categories of claims are designed as having priority over other categories of claims and are entitled to payment in full before those not granted priority. **Within the category of priority claims, there is further ranking and those with higher priority are entitled to payment ahead of those with lower priority.**

This means that Congress has recognized that domestic support obligations should be paid first over all other unsecured claims including attorney's fees (number 2).

Since this appears to be a case of first impression in this division, the Court must look at the plain language of the statute, and the Court is bound by the statute's plain language unless the result is at odds with the intentions of the drafters. *In re Griffin vs. Oceanic Contractors, Inc.,* 458 U.S. 564, 571 (1982). As a general rule, if the language of the statute is plain, then the Court's function ceases, and the Court is bound to enforce the statute "according to its terms". *In re United States v. Ron Pair Enterprises,* 489U.S. 235, 241, 109 S. Ct 1026, 1030 (1989).

According to the plain language of this statute, there are no other priorities that are recognized in the Code except those listed in Section 507(a). Courts are not free to use equitable or other principles to alter the statutory priorities set forth in the Code. *Collier on Bankruptcy* @ 507.02 [9] 15th ed. (2006).

3

Respectfully, this Court must conclude that the language of Section 507(a)(l) is clear and unambiguous on its face. Its intent is to provide domestic support obligations with greater leverage in Chapter 13 cases so that former spouses and children will no longer be the losers in bankruptcy.

### B. DIFFERENCE BETWEEN 507(a)(l)(A) and (a)(l)(B)

Section 507(a)(l) of the Code divides domestic support obligations into two groups: (A) being those obligations owed directly to the custodial parent who hires DHR to help him/her collect unpaid child support plus interest and medical expenses; and (B) being those obligations that are owed to the state where the child has received Aid to Dependent Children (ADC). While both are priority debts and non-dischargable, Section 1322(a)(4) allows those debts described in (a)(l)(B), which are owed directly to the state, to receive "less than full payment" in a Chapter 13 proceeding. This means that if a debtor owes a (a)(l)(B) type debt of $10,000.00, the plan may provide for state/DHR to receive only $5,000.00 through the plan. The outstanding balance of $5,000.00 while not paid through the plan survives that Chapter 13 discharge.

Section 1322(a)(2) applies to those support obligations found in (a)(l)(A). These types of debts, which are owed directly to the custodial parent, must be paid in full as a first priority debt i.e., ahead of attorney fees.  It should be noted that approximately ninety percent of all DHR claims are those owed directly to the custodial parent.  For further discussion on the difference between these two types of claims, review *In re Gray* 269 B.R. 888 (N.D.Ala.2001).

## C. CONGRESSIONAL INTENT

The Court should also consider the intent of Congress with regards to domestic support obligations. Prior to the 1994 amendments, child support was treated as a "general unsecured claim" and rarely received any distribution in a Chapter 13 case. Bankruptcy filings were used by debtors to frustrate the collection of child support and to find a "safe haven" to avoid state court contempt proceedings. Congress saw a need to treat these claims more favorably and granted them priority status (number 7) with the enactment of the 1994 amendments. However, it became apparent that even as a priority claim, child support was not receiving the treatment it deserved. In many cases, lengthy periods of time (two or three years) would lapse before child support claimants received a distribution from the Chapter 13, if anything at all.

In 2005, Congress established domestic support obligation as the highest priority for distribution in bankruptcy proceedings. *Collier on Bankruptcy* Section 507.002, 15th ed. (2006). It also amended the automatic stay provisions of Section 362 as follows: (1) BAPCPA permits the continuation of withholding income that is property of the estate for payment of a domestic support obligation under a judicial or administrative order, and (2) an agency can offset tax refunds for support arrearages whereas before, a Chapter 13 debtor's tax refund was protected as long as he was in bankruptcy. Finally, Congress made it necessary for a Chapter 13 debtor to be current with support obligations before his plan can be confirmed and before he receives a discharge. Failure to pay current child support obligations is now a grounds for dismissal. Section 1307(c)(l 1).

The net result of these changes as pertaining to domestic support obligations is it allows spouses and children to have more power in Chapter 13 cases, even the ability to scuttle the proposed plan if they are not paid.   With the 2005 amendments,

Congressional intent is clear: children are the top priority and should be able to get more money faster through the bankruptcy process. Congressional intent was specifically laid out in The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 Report of the Committee on the Judiciary House of Representatives page 45. It states:

" S.256 would enhance a State's ability to collect domestic support obligations, including child support. DOMESTIC SUPPORT OBLIGATIONS OWED TO STATE OR LOCAL GOVERNMENTS WOULD BE GIVEN PRIORITY OVER ALL OTHER CLAIMS EXCEPT THOSE SAME OBLIGATIONS OWED TO INDIVIDUALS." (Emphasis added.)

The intent of Congress is clear. They specifically intended for our courts to follow the new 507 (a) and pay domestic support obligations first, before any other claims.

Based on the plain language of Section 507(a)(l), the intent of Congress, this Court must conclude that domestic support obligations have first priority over all other priority debts including attorney's fee's . Congress intended this to be the case and specifically made provision in 507(a)(1)(c) for the trustee to get paid and made no such provision for attorneys to get paid before domestic support obligations. In fact, they specifically intended for domestic support obligations to be paid first.

### D. OPPONENTS' ARGUMENTS TO THE POSITION OF DHR

Those who oppose the position of the State of Alabama, Department of Human Resources and its strict interpretation of Section 507(a) may argue that this section is not applicable to Chapter 13 cases. However, Section 103(a) of the Code states that chapters 1, 3 and 5, which includes Section 507(a)(l), are applicable in Chapter 13 proceedings. Thus, 507(a)(l) must be applied to all Chapter 13 cases. Opponents may also argue that

the plan only has to provide that the priority claim be paid in full during the life of the plan. Again, DHR would argue that this is contrary to the plain language of 507(a)(l).

Opponents to the position of DHR also may argue that Sections 725 and 726 of the Code requires that secured creditors be paid first, then priority and lastly unsecured creditors; therefore, assuming that secured creditors are paid first in Chapter 13 cases. However, this is not what the Code says. Looking back as Section 103(b), it very plainly states that Subchapters I and II of Chapter 7 of this title only apply in cases under such title. Sections 725 and 726 are only applicable in Chapter 7 proceeding, not Chapter 13 proceedings.

Finally, in the Boler case debtor's counsel argues that In re Aldridge, Case No. 02-13580-MAM-13, United States Bankruptcy Court for the Southern District of Alabama, 335B.R. 889;2005 Bankr.LEXIS 2660, November 16, 2005 facilitates the debtors position for attorney fees to be paid before DHR. In the Aldridge order footnote 1 states :
 "…..the ruling in this case will only apply to cases filed before October 17, 2005. " Judge Mahoney in the Southern District made it very clear that this ruling would not apply to cases filed post BAPCPA.  Both cases in question here were filed post BAPCPA. Therefore the Aldridge order does not apply to these cases.

## ISSUE TWO

## WHAT IS THE PRIORITY TO BE GIVEN DOMESTIC SUPPORT OBLIGATIONS AS REGARDS TO SECURED CLAIMANTS?

### A. SECTION 1325(a)(5)(B)(iii)(I) and (II)

DHR contends that the secured creditor should receive sufficient post-

confirmation adequate protection payments during the time the 507(a)(l) domestic support obligation is being paid. Once the domestic support obligation is paid, the plan payment to the secured creditor(s) would be increased to an amount sufficient to pay the claim(s) in full. This type of arrangement would be in accordance with Sections 1325(a)(5)(B)(iii) (I) and (II) and 507(a)(l).

### B. SECURED CLAIMANTS ADDITIONAL PROTECTION

Section 1322(b)(4) states that the plan may provide for payment on any unsecured claim to be made concurrently with payments on any secured claim. Under this arrangement, the secured creditor is not prejudiced because it retains its lien on the collateral during the life of the plan and has adequate protection while the domestic support claims are being paid.

If a debtor converts to a Chapter 7, the lien remains in place until the full amount of the debt is paid. Also the debtor is required to maintain insurance on the collateral, which provides additional protection to the secured creditor.

DHR argues that it is against public policy and certainly not Congresses intent to pay a secured creditor before domestic support obligations when the creditor had sufficient knowledge of the domestic support obligation when the parties entered into the loan agreement. The children certainly could not chose who would pay for their support. Again, Congresses intent is clear and it was not to allow any claim to be paid before domestic support obligations. The secured creditors should not be rewarded for a bad business decision and be paid before the domestic support claims.

## ISSUE THREE

## DOES DHR HAVE TO ACCEPT AN AMENDED PLAN PURPOSING TO PAY A DOMESTIC SUPPORT OBLIGATION OUTSIDE THE PLAN?

1322 (a) (2) states the plan shall provide for full payment, in deferred cash payments, of all claims entitled to priority under section 507of this title, UNLESS THE HOLDER OF THE PARTICULAR CLAIM AGREES TO A DIFFERENT TREATMENT OF SUCH CLAIM. (Emphasis added.) In the Boler case DHR has not agreed to be paid direct. Therefore the amended plan can not be confirmed.

## CONCLUSION

This Court should read the plain language of Section 507(a)(l) of the Bankruptcy Abuse Prevention and Consumer Protection Act and determine that domestic support obligations have priority over attorney's fee, tax claims and other priority claims. The Court should also consider the intent of Congress when it gave domestic support obligations such an elevated position by other code sections such as Sections 362(b) (automatic stay), 1307(grounds for dismissal of petition) and 1325 (grounds to deny confirmation). Congress made sure after the 1994 amendments were enacted and domestic support obligations were still not considered a priority that with BAPCPA the act would be clear and follow the intent of Congress: pay domestic support obligations first.

In accordance with the priority status, domestic support obligations should be paid first with the secured creditor(s) receiving a payment that adequately protects their interests in the collateral. Any proposed plan that does not provide for domestic

9

support to be paid first cannot be confirmed.

Respectfully submitted this the 13th day of April 2006.

/s/ Richard G. Moxley, III
Attorney for DHR
Holloway and Moxley, LLP
556 South Perry Street
Montgomery, AL 36104
rmoxley@hollowaymoxley.com

**CERTICATE OF SERVICE**

I hereby certify that I have placed a copy of this pleading in the US Mail, postage prepaid to those persons listed below on this the 13th day of April 2006.

/s/ Richard G. Moxley, III

Curtis C. Redding
US Bankruptcy Trustee
P.O. Box 173
Montgomery, AL 36101

Vonda S. Mcleod
Shinbaum, Abell, Mcleod and Vann
566 S. Perry Street
Montgomery, AL 36104