**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA**

IN RE:       }
          }
CLEVELAND D. BOLER, III  }  Chapter 13
EVELYN D. BOLER    }  Bankruptcy Case No. 06-30049
          }
Debtors       }

_____

THE STATE OF ALABAMA DEPARTMENT OF HUMAN RESOURCES

Appellant,

v.

CLEVELAND D. BOLER, III
EVELYN D. BOLER
CURTIS C. REDDING, CHAPTER 13 TRUSTEE

Appellees

Case No. 2:2006-CV-00473-WKW

_____

ON APPEAL FROM THE UNITED STATES BANKRUTPCY COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
_____

BRIEF OF APPELLANT

THE STATE OF ALABAMA DEPARTMENT OF HUMAN RESOURCES

Jennifer M. Bush (BUS016)
Assistant Attorney General
State of Alabama
PO Box 304000
Montgomery, Alabama 36130-4000
Telephone:  334-242-9335
Facsimile:  334-242-0689
E-Mail:   jbush@dhr.state.al.us

# **TABLE OF CONTENTS**

TABLE OF CONTENTS………………………….…………………………………2

TABLE OF AUTHORITIES…………………………………………………...…….3

STATEMENT OF ISSUES………………………………………………………....5

STATEMENT OF THE CASE……………………………….……………………...6

STATEMENT OF THE FACTS………………………………...……………..…..7

ARGUMENT……………………………………………………….…………...……8

       I.    Under the Bankruptcy Abuse Prevention Act and Consumer Protection Act of 2005, the debtors' Chapter 13 plan must provide for payment in full of a Domestic Support Obligation before any disbursement can be made to other 507(a) priority claims including attorney's fee……………………………………….……………8

       II.    The debtors' plan must limit distribution to secured creditors during the time the Domestic Support Obligation is being paid. …………………………………………...……………..16

       III.    Priority claims cannot be paid outside of the plan without the consent of the creditor…………………………………………20

CONCLUSION……………………………………………………...………………22

CERTIFICATE OF SERVICE………………………………………………...…23

2

## TABLE OF AUTHORITIES

**Cases**

In re Aldridge
    335 B.R. 889 (Bankr.S.D.Ala.2005)…………………………………..14, 15

In re DeSardi
    __ B.R. ___, 2006 WL 1061893………………………………………….…16
    (Bkrtcy.S.D.Tex)

In re Evans
    66 B.R. 506 (Bkrtcy.E.D.Pa.1986)…………………………………………...21

In re Gray
    269 B.R. 881 (Bankr.N.D.Ala.2001)…………………………………….....8

In re Griffin v. Oceanic Contractors
    458 U.S. 564 (1982)……………………………………………………….14, 18

Gulf Life Insurance Co., v. Arnold
    809 F.2d 1520 (11th Cir. 1987)……………………………………………15

In re Harris
    200 B.R. 745 (Bkrtcy.D.Mass.1996)………………………………………..20

In re Stevens
    130 F.3d 1027 (11th Cir. 1997). …………………………………..……….17, 18

In re United States v. Ron Pair Enterprises
    489 U.S. 235, 109 S.Ct. 1026 (1989)……………………………….…….16

**Statutes**

11 U.S.C. 101……………………………………………………….……………8

11 U.S.C. 103…………………………………………………………...…12, 14

11 U.S.C. 361…………………………………………………………………17

11 U.S.C. 362…………………………………………………………………11,17

11 U.S.C. 501 …………………………………………………………………14

11 U.S.C. 502 …………………………………………………………………14

11 U.S.C. 507………………………………………8, 9,10,11,12,13,14,15,16,19, 21

11 U.S.C. 1302…………………………………………….…………………10

11 U.S.C. 1307 …………………………………………………………………..11

11 U.S.C. 1322……………………………………………………………………..20

11 U.S.C. 1325………………………...………………………………11, 16, 17

11 U.S.C. 1326 ……………………………………………...………...18, 19, 20

42 U.S.C. 666………………………………………………………………………17

**Other Authorities**

*Bankruptcy By the Numbers,* Executive Office of the United States Trustees ………….13

*Collier on Bankruptcy* @ 507.02 [1][a], 15th ed. (2006) …………………….....…..9, 14

BAPACPA Report of the Committee of the Judiciary House of Representatives..…..10,11
.

## <u>STATEMENT OF ISSUES ON APPEAL</u>

I.    Under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 the debtors' Chapter 13 Plan must provide for payment in full of a Domestic Support Obligation pursuant to 11 U.S.C. 507(a)(1) before any disbursement can be made on other Section 507(a) priorities including attorney's fee.

II.    The debtors' plan must limit distribution to secured creditors during the time the Domestic Support Obligation claim is being paid.

III.    Priority claims cannot be paid outside of the plan without the consent of the creditor.

## STATEMENT OF THE CASE

A.    Nature of the case

This is an appeal from an order of the United States Bankruptcy Court for the Middle District of Alabama, (the "Bankruptcy Court") confirming a Chapter 13 plan under Title 11 of the United States Code, 11 U.S.C. Sections 1301-1328 (the "Bankruptcy Code"). The issue is how Domestic Support Obligations are to be treated under a Chapter 13 plan under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA).

B.    Course of Proceedings and Dispositions Below

Cleveland and Evelyn Boler filed Chapter 13 on January 18th, 2006. (Petition, Doc. # 1)    The Alabama Department of Human Resources (DHR) filed a priority claim in the amount of $9,110.41.    In addition, DHR filed an objection to confirmation of the Chapter 13 plan stating that 11 U.S.C. §507(a)(1)(a) required domestic support obligations to be paid before all other claims including administrative and secured claims. (Objection, Doc. # 23)       The Bolers filed an amended plan offering to pay the child support arrears direct and outside the plan. (Amended Plan, Doc. # 25)

On April 28, 2006, the Bankruptcy Court entered its Memorandum Opinion and Order overruling the objection of DHR on the issue that the domestic support obligation should be paid prior to other priority claims (attorney's fee). (Memorandum Opinion, Doc. # 41)    DHR filed its notice of appeal on May 5, 2006. (Appeal, Doc. # 46.)

## STATEMENT OF FACTS

Cleveland and Evelyn Boler filed Chapter 13 on January 18th, 2006 following enactment of the Bankruptcy Abuse and Consumer Protection Act of 2005 ("the 2005 Act"). (Petition, Doc. # 1)    At the time of filing, Mr. Boler owed the Alabama Department of Human Resources (DHR) for child support arrears pursuant to a Baldwin County Domestic support order and subsequent Rule Nisi Petition which, under the new provisions of the 2005 Act, qualifies as a domestic support obligation.  Prior to filing, Mr. Boler had been paying the child support arrears by an income/wage withholding order. The Bolers filed a Chapter 13 plan providing for payment in full of the child support arrears through the Chapter 13 plan following payment of administrative and secured claims. (Plan, Doc. # 2)    The DHR subsequently filed a priority claim in the amount of $9,110.41.   In addition, DHR filed an objection to confirmation of the Chapter 13 plan stating that 11 U.S.C. §507(a)(1)(a) required domestic support obligations to be paid before all other claims including administrative and secured claims. (Objection, Doc. # 23)    The Bolers filed an amended plan offering to pay the child support arrears direct and outside the plan. (Amended Plan, Doc. # 25)

On April 28, 2006, the Bankruptcy Court entered its Memorandum Opinion and Order overruling the objection of DHR on the issue that the domestic support obligation should be paid prior to other priority claims (attorney's fee). (Memorandum Opinion, Doc. # 41)    DHR filed its notice of appeal on May 5, 2006.  (Appeal, Doc. # 46.)

**ARGUMENT**

**ISSUE ONE**

**UNDER THE BANKRUPTCY ABUSE PREVENTION AND CONSUMER PROTECTION ACT OF 2005 MUST THE DEBTORS' CHAPTER 13 PLAN PROVIDE FOR PAYMENT IN FULL OF A DOMESTIC SUPPORT OBLIGATION PURSUANT TO 11 U.S.C. 507(a) BEFORE ANY DISTRIBUTION CAN BE MADE ON OTHER SECTION 507(a) PRIORITIES INCLUDING ATTORNEY'S FEE.**

Prior to 1994, child support was treated as a "general unsecured claim" and rarely received any distribution in a Chapter 13 bankruptcy case.   The Bankruptcy Abuse Prevention and Consumer Protection Act ("BAPCPA") of 2005 amended several provisions of the Bankruptcy Code as it relates to child support.   Bankruptcy Code 11 U.S.C. 101 (14)(A) expanded the definition of child support and now such obligations are referenced as a 'domestic support obligation'.   Also modified was the order in which priority claims would be paid.   Bankruptcy Code 11 U.S.C. 507(a) outlines the hierarchy of claims and gives some claims higher priority over other claims.   Under the former Section 507(a), domestic support obligation were listed as number seven (7) in the hierarchy of priorities of claims to be paid by the debtor unless the domestic support obligations were owed to a governmental unit, and in that event, they were paid as general unsecured claims.    *In re Gray,* 269 B. R. 881 (Bankr.N.D.Ala. 2001).   The new Section 507(a) under BAPCPA moved domestic support obligations from the seventh priority to first priority.

Section 507(a)(1) further categorizes domestic support obligations into two types. Section 507(a)(1)(A) provides for domestic support obligations that are "owed to or recoverable by a spouse, former spouse, or child of the debtor or such child's parent, legal guardian or responsible relative." Section 507(a)(1)(B) provides priority status for claims that "are assigned…to a governmental unit."

After domestic support obligations, 11 U.S.C 507(a) gives second priority to attorney fees and expenses. Section 507(a)(2) provides for the payment of "administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28." As explained in *Collier on Bankruptcy* @ 507.02 [1][a], 15th ed. (2006) the hierarchy of claims is important because often there is not enough money to pay all of the claims in full. *Collier on Bankruptcy* @ 507.02 [1][a], 15th ed. (2006) states:

> Many bankruptcy cases do not generate sufficient proceeds to pay in full all claims entitled to payment. It became necessary to allocate the insufficient proceeds among the holders of claims in some manner. Were the principles of equality among the creditors the only guiding principle in a bankruptcy case, the allocation of proceeds would be apportioned among all holders of claims in proportion to the amount of their claim. Yet, there are other principles that govern the bankruptcy process and those principles have led to the establishment of a hierarchy by which some claims are entitled to payment before others.
>
> The structure of the Bankruptcy Code reflects the decision by Congress to prefer certain categories of claims over other claims. The preferred categories of claims are designed as having priority over other categories of claims and are entitled to payment in full before those not granted priority. Within the category of priority claims, there is further ranking and those with higher priority are entitled to payment ahead of those with lower priority.
>
> The 2005 Act established domestic support obligations as the highest priority for distribution in bankruptcy cases. Prior to the enactment of this legislation, bankruptcy administrative expenses were accorded the highest

priority and domestic support obligations were granted a seventh priority. The creation of this higher priority for domestic support obligations was part of a series of amendments created by the 2005 Act designed to enhance the status of domestic support obligations in bankruptcy case and to prevent what Congress believed to be abuses of the bankruptcy process with respect to domestic support obligations.   The series of domestic support amendments mark a clear congressional intent that domestic support obligations be considered paramount in bankruptcy cases.  There is, however, one limitation on this otherwise priority.  Certain fees and expenses of the trustee will come ahead of domestic support obligations to the extent that the trustee administers assets that are available for payment of claims.

By adding the phrase, "in the following order" to 11 U.S.C. 507(a), Congress intended to have some priority claims paid ahead of other priority claims.  If that had not been the intent of Congress, it would have simply given all claims equal status. Congressional intent was specifically laid out on page 45 of the BAPACPA Report of the Committee of the Judiciary House of Representatives.  In a section with the heading, "Estimated Impact on State, Local and Tribal Government," the reports states

> S.256 would enhance a State's ability to collect domestic support obligations, including child support.  Domestic support obligations owed to the State or local governments would be given priority over all other claims except those same obligations owed to individuals.

In the same report, the distinguished Senator from Alabama, Jeff Sessions, is reported to have made the following statement on Friday, March 4, 2005, on the floor of the United States Senate in regards to domestic support obligations and BAPCPA:

> Child support obligations will be revolutionized….Under the current law, if we don't change it by passing this bill, the law that will remain effectively has alimony and child support payments No. 7 on the list of priorities for paying nonsecurity debt-No. 7 in the list.  We moved it up to the top.  Everybody who knows anything about this bill knows that women and children and their alimony and child support is going to be secured in a way it never has been before.

In addition to granting a domestic support obligation first priority in 11 U.S.C 507(a), BAPCPA also makes several other important changes as pertaining to domestic support obligations. The automatic stay provisions of 11 U.S.C. 362 permit the following: (1) the continuation of withholding income that is property of the estate for payment of a domestic support obligation under a judicial or administrative order, and (2) an agency can off set tax refunds for support arrearages whereas before, a Chapter 13 debtor's tax refund was protected as long as he was in bankruptcy.  Bankruptcy Code 11 U.S.C 1325 makes it necessary for a Chapter 13 debtor to be current with support obligations before his plan can be confirmed and before he receives a discharge.  Finally, failure to pay current child support obligations is now a grounds for dismissal of a Chapter 13.  11 U.S.C.  1307(c)(11).   Congress intended for domestic support obligations to receive favorable treatment.

Domestic support obligation claims filed under 11 U.S.C. 507(a)(1)(A) and (B) should be paid in full prior to all other priority claims except for certain trustee fees and expenses.  Section 507(a)(1)(C) specifically provides for payment to the Chapter 13 trustee and reads as follows:

> If a trustee is appointed or elected under section 701, 702, 703, 1104, 1201 or 1302, the administrative expenses of the trustee allowed under paragraphs (1)(A), (2), and (6) of section 503(b) shall be paid before payment of claims under subparagraphs (A) and (B), to the extent that the trustee administers claims that otherwise available for the payment of such claims.

Congress made a specific provision for the payment of certain trustee fees and expenses.   Trustees appointed under Section 1302 were referenced in Section 507(a)(1)(C) because Congress intended a domestic support obligations to be paid first;

accordingly, Congress provided a mechanism by which Chapter 13 Trustees could receive fees for their services in disbursing payment on domestic support obligations claims. Congress did not allow such treatment for attorney fees. In fact, Congress specifically prioritized attorney fees second in priority after domestic support obligations under 11 U.S.C. 507(a).

The Bankruptcy Court in this case in its memorandum opinion of April 28, 2006 stated in part:

> The court addressed the argument that in a Chapter 7 case, § 726(a)(1) requires priority claims to be paid "in the order specified" in § 507 by stating: '[t]here is not a similar provision in Chapter 13 requiring priority creditors to be paid "in the order specified in section 507." Id. At 3. Indeed, § 1326 requires the trustee to pay § 507(a)(2) administrative expenses 'before or contemporaneously with payments to other claimholders under the plan.' Id. BAPCPA does not reflect any change in Congressional intent: (Memorandum Opinion, Doc. # 41, pages 3- 4)

The Bankruptcy Court's reasoning that Section 507(a) does not apply to chapter 13 cases is erroneous for three reasons. First, the changes BAPCPA wrought to Section 507(a) would be virtually useless if not applicable to Chapter 13 cases. Second, Section 507(a)(1)(C) specifically references Chapter 13 trustees. Third, 11 U.S.C 103 (a), which outlines the sections of the bankruptcy Code that are applicable to each Chapter of bankruptcy, specifically provides that 11 U.S.C. 507(a) applies to Chapter 13 bankruptcy cases.

The first reason Chapter 13 cases are governed by 11 U.S.C. 507(a) is because the changes BAPCPA wrought to Section 507(a) would be virtually useless if not applicable to Chapter 13 cases. The majority of Chapter 7 bankruptcy cases are "no asset" cases.

That means there are no assets to distribute to any creditor, whether priority or unsecured.

> The United State Trustee Program has collected statistics on the distribution to creditors, professional, and trustees in chapter 7 asset case since 1993…During the year ending June 30, 2002, there were 1,026,901 Chapter 7 cases closed nationwide.  About 96% of chapter 7 cases are closed without any funds collected or distributed to creditors by the assigned trustee.

 "Bankruptcy By the Numbers", written by Ed Flynn, Executive Office for the United States Trustees, Gordon Bermant, Burke Virginia, and Suzanne Hazard, Executive Office of the United States Trustees, compiled statistical information on Chapter 7 bankruptcy cases.  Although these statistics only include 48 states (Alabama and North Carolina do not participate in the Trustee Program), it is reasonable to assume that the statistics for Alabama are comparable to the nationwide statistics.   Congress does not enact meaningless legislation.   "Absent clear congressional intent to the contrary, we will assume the legislature did not intend to pass vain or meaningless legislation."  *Gulf Life Insurance Co., v. Arnold*, 809 F.2d 1520, 1524 (11th Cir. 1987).   Shifting domestic support obligations from seventh priority to first priority in Chapter 7 cases would be useless since there usually are no assets in a Chapter 7 cases to pay out, no matter what the priority of claims.

The second reason Chapter 13 cases are governed by 11 U.S.C. 507(a) is because Chapter 13 Tustees expenses are specifically references in Section 507(a).  As discussed previously, Section 507(a)(1)(C) allows for Chapter 13 trustees to be paid prior to domestic support obligations.   Congress intended for 11 U.S.C. 507(a) to apply to Chapter 13 cases because Section 507(a) references Chapter 13 Trustees and specifically

outlines the priority of the payment of the Chapter 13 Trustee expenses.   Section 507(a) must be applied for the Chapter 13 Trustee to be paid.   The fact that Congress included Chapter 13 Trustees in 507(a)(1)(C) shows that the priority of claims set forth in 507(a) clearly applies to Chapter 13 proceedings.

The third reason Chapter 13 cases are governed by 11 U.S.C. 507(a) is because 11 U.S.C 103(a) specifically states that Section 507(a) applies to Chapter 13 cases. Bankruptcy Code 11 U.S.C 103(a) states:

> Excepted at provided in section 1161 of this title, chapters 1, 3 and 5 of this title apply in a case under Chapter 7, 11, 12 or 13 of this title…

Section 103(a) unambiguously provides that the provisions of Section 507(a) apply to a Chapter 13 bankruptcy case in the same manner as Section 501(filing a proof of claim) and Section 502 (allowance of claims) apply to Chapter 13 bankruptcy cases.

As a general rule, if the language of the statute is plain, then the Court is bound to enforce the statute "according to its terms".  *In re United States v. Ron Pair Enterprises*, 489 U.S. 235, 241, 109 S. Ct 1026, 1030 (1989). The Court is bound by the statute's plain language unless the result is at odds with the intentions of the drafters.  *In re Griffin vs. Oceanic Contractors, Inc.,* 458 U.S. 564, 571 (1982).

There are no other priorities that are recognized in the Bankruptcy Code except those listed in 11 U.S.C. 507(a).  Courts are not free to use equitable or other principles to alter the statutory priorities set forth in the Code.  *Collier on Bankruptcy* @ 507.02 [9] 15th ed. (2006).   Because the language of cite is plain, the Court is bound to enforce 11 U.S.C. 507(a) according to its terms and pay domestic support obligations in full prior to attorney fees.

In the Bankruptcy Court's decision in this case, the Court referenced *In re Aldridge*, 335 B. R. 889 (Bankr.S.D.Ala.2005) in which the *Aldridge* Court stated

> As long as full payment of the priority claims is provided for in the plan, nothing in Section 1322 requires that higher priority must be paid fully before paying lower claims….This result is further supported by the plain language of Section 1332(a)(4).

*Aldridge at 891.*

It must be noted that in the *Aldridge* case, DHR had filed a Motion for Instruction because the "standard" order of confirmation required the trustee to pay priority claims "pursuant to and in the order set forth in Section 507(a), unless the priority is expressly waived."   The trustee, however, was making distributions of priority claims on a pro rata basis.   After the *Aldridge* Court ruled in favor of DHR, the trustee began making priority claims in the order set forth in Section 507(a) and pursuant to confirmation order.

It should be noted that the payment scheme of 11 U.S.C. 507(a)(1) claims was not the issue in *Aldridge*.  Additionally, in footnote 3 of the opinion her opinion the *Aldridge* Court specifically stated that her decision applied only to pre-BAPCPA cases due to the fact that it was rendered prior to the Act becoming law on October 17, 2005.

## ISSUE TWO

## THE DEBTOR'S CHAPTER 13 PLAN MUST LIMT THE DISTRIBUTION TO SECURED CREDITOR DURING THE TIME THE DOMESTIC SUPPORT OBLIGATION IS BEING PAID.

The Bankruptcy Court stated on in its opinion April 28, 2006 memorandum opinion that it adopted the reasoning below that appeared in *In re Sanders*, 2006 WL 1000461 (Bank. N.D. Ala.). (Memorandum Opinion, Doc. # 41, page 4.)  The Bankruptcy Court in *In re Sanders* stated:

> It is important to remember, however, the DHR is an unsecured creditor. Unsecured creditors are only entitled to the assets remaining after secured creditors have taken either the value of their collateral or the collateral itself. (Memorandum Opinion, Doc. # 41, page 3.)

In a Chapter 7 proceeding, this statement is true.  There is no provision in the Bankruptcy Code that states secured creditors are paid first in a Chapter 13 case.  On the contrary, 11 U.S.C. 1325(a)(5)(iii)(I) and (II) provides that the secured creditors should receive monthly payments of an amount not less than an amount sufficient to provide the holder of the claim adequate protection during the life of the plan.  It is important to note that "equal monthly amounts" do not have to begin on the "effective date of the plan", which is the confirmation date.  In *In re DeSardi*, __B.R. ___ , 2006 WL 1061893 (Bkrtcy.S.D.Tex), the Bankruptcy Court stated,

> The correct reading of this provision is…the equal payment provision requires that payments be level once they begin and terminate once the lender is fully paid.  Exactly when these level payments begins is case-specific…[the] equal payment does not need to start in month one of the plan as does adequate protection….An adequate protection payment that occurs after the plan is confirmed cannot set the standard as to what the equal payment will be once they begin.

A secured creditor can continue to receive the adequate protection payments as set forth in 11 U.S.C 1325(a)(5)(iii)(II) after the effective date/confirmation of the plan while the domestic support obligation is paid.  Once the domestic support obligation is paid, the equal monthly payments may begin to the secured creditor and terminate when paid in full.  This provision does away with "pro rata" payments for secured creditors.  By setting out in the plan equal payment amounts which the creditor will receive, the creditor knows what payments to expect and when to expect them.

Additionally, any individual who owes at least $1,000.00 in past-due child support is reported to the credit bureaus.  42 U.S.C 666 (a)(7)  Creditors have the ability and responsibility to review an individual's credit reports prior to engaging in business with that customer.  If secured creditors are allowed  "first payment" against the best interest of a domestic support obligation, secured creditors will have no incentive to be more selective in determining to whom they sell and finance property.

It must be remembered that the secured creditor is protected through the Chapter 13 bankruptcy process. Not only does the secured creditor retain the lien on the collateral, but the secured creditor is entitled to receive monthly payments of not less than an amount sufficient to provide the holder with adequate protection.  11 U.S.C. 1325(a)(5) (B)(ii).   Maintain insurance on the collateral during the life of the plan also provides adequate protection to the secured creditor. 11 U.S.C. 361 (2) and (3);  11 U.S.C. 362 (d)(1).

> The policy at issue in this case is intended to protect both the owner and the secured creditor in the event of the destruction of the security (the truck). In the context of the insurance policy on the truck, therefore, the proceeds act as a substitute for the insured collateral. *See Bradt v. Woodlawn Auto Workers (In re Bradt), 757* F.2d 512, 515 (2d Cir.1985)

(citing H.R.Rep. No. 595, 95th Cong., 1st Sess. 368 (1977)) (holding that broad definition of "proceeds" under 11 U.S.C. § 541(a)(6) encompasses insurance proceeds that simply represent a "conversion in form of property of the estate"); *In re Suter,* 181 B.R. 116, 120 (Bankr.N.D.Ala.1994) (observing that, "[f]rom a secured creditor's perspective, property insurance is a substitute for the collateral insured"); *see also In re Jones,* 179 B.R. 450, 454 (Bankr.E.D.Pa.1995) (concluding that home insurance proceeds constitute liquidated property of the bankruptcy estate). Ford's interest in the insurance proceeds flowing from the destruction of the secured collateral is only as great as its interest in the collateral itself. *See In re Feher,* 202 B.R. at 970-71; *In re Arkell,* 165 B.R. 432, 434 (Bankr.M.D.Tenn.1994).

*In re Stevens,* 130 F.3d 1027, 1030 (11th Cir. 1997).

The secured creditor is not be prejudiced by waiting over time for the bulk of its claim to be paid. Additionally, if payments are not made, the secured creditor has the right to seek relief from the automatic stay to reclaim its collateral. While creditors can choose their debtors, children for whom child support is owed do not have that luxury.

Bankruptcy Code 11 U.S.C. 1326(b)(1) states that any unpaid claim of the kind specified in 11 U.S.C. 507(a)(2) (administrative expense claims such as attorney fees and adequate protection payments) shall be paid before or at the time of each payment to creditors under the plan. When reading Section 1326(b)(1) in conjunction with Section 507(a)(1), however, there appears to be a conflict between the specific language in these two sections. In *In re Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564 (1982), the Supreme Court stated:

Although there is no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes, in rare cases the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters, and those intentions must be controlling.

*In re Griffin at 571.*

18

DHR has extensively discussed its position on Congressional intent in this brief. DHR's position is that because there appears to be ambiguity when reading these two code sections together, this Honorable Court must look to the intent of Congress. Had Congress intended that Section 1326(b)(1) have application for the payment of an administrative claim ahead of a DSO claim, then 507(1)(a)(C) would not have been necessary.

**ISSUE THREE**

**PRIORITY CLAIMS CANNOT BE PAID OUTSIDE OF THE PLAN WITHOUT THE CONSENT OF THE CREDITOR**

The Bankruptcy Code clearly contemplates that under certain conditions the debtor may make payments outside the bankruptcy plan directly to creditors.  Bankruptcy Code 11 U.S.C. 1326(c) states in part:

> [E]xcept as otherwise provided in the plan or in the order confirming the plan, the trustee shall make payments to creditors under the plan.

Payments outside the plan, however, must not violate 11 U.S.C. 1322 which guides the contents of the bankruptcy plan.  Bankruptcy Code 11 U.S.C. 1322(a)(1) and (2) state:

> (a) The plan **shall**--

> (1) provide for the submission of all or such portion of future earnings or other future income of the debtor to the supervision and control of the trustee as is necessary for the execution of the plan;

> (2) provide for the full payment, in deferred cash payments, of all claims entitled to priority under <u>section 507</u> of this title, unless the holder of a particular claim agrees to a different treatment of such claim; (emphasis added)

Under Section 1322(a)(1), a debtor must submit all future income and earnings to the trustee.  Under Section 1322(a)(2), a creditor must consent to different treatment.  Section 1322 is mandatory as indicated by the use of the word "shall".  There could be situations in which the claims are paid from funds other than future earnings.  *In re Harris*, 200 B.R. 745 (Bkrtcy.D.Mass.1996).

Other jurisdictions have determined that unsecured priority claims under 11 U.S.C. 507(a) cannot be paid outside the plan.   The Court in *In re Evans*, 66 B.R. 506 (Bkrtcy.E.D.Pa.1986) found

> We also disagree with the Debtor's contention that his tax liabilities for the years 1982, 1983, and 1984 can be dealt with "outside" the Plan. These claims, totalling $997.08, are, as the Debtor concedes, priority claims within the scope of 11 U.S.C. § 507(a)(7)(A). These liabilities are *not* secured by any tax liens. They are, therefore, unsecured priority claims, concerning which 11 U.S.C. § 1322(a)(2) mandates that "[t]he plan shall- ⋯ provide for the full payment," unless the IRS, as seems unlikely here, should agree to a different treatment. *See Healis, id.* Therefore, the Debtor cannot pay *this* sum "outside" of the Plan, and must either provide for the payment of this sum, or suffer possible revocation of his confirmation and dismissal of his case.

*In re Evans at 510-511.*   In this case the domestic support obligation was to be paid from the future earnings of the debtor and thus, under 11 U.S.C. 1322 (a)(1), the debtor's future earnings had to be paid to the trustee.  The DHR did not consent to payment of the domestic support obligation outside the plan, thus, under 11 U.S.C. 1322 (a)(2), the domestic support obligation must be paid through the plan.

## **CONCLUSION**

Congress intended for domestic support obligations to be given priority in bankruptcy cases when it amended 11 U.S.S. 507(a) and placed domestic support obligations as the number one priority. Congress intended, and 11 U.S.C 103 (a), specifically provides, that 11 U.S.C. 507(a) applies to Chapter 13 bankruptcy cases. There is no provision in the Bankruptcy Code that states secured creditors are paid first in a Chapter 13 case. Further, secured creditors can be afforded adequate protection. Under 11 U.S.C. 1322 (a)(1), the future earnings have to be paid to the trustee. Because DHR did not consent to be paid outside the plan, pursuant to 11 U.S.C. 1322 (a)(2), the domestic support obligation must be paid through the plan.

For the reasons stated above, the State of Alabama Department of Human Resources respectfully requests that this Honorable Court reverse the decision of the Bankruptcy Court and find that domestic support obligations should be paid prior to all other priority claims, including attorney fees, and that the domestic support obligation must be paid through the bankruptcy plan.

Respectfully submitted this the 16th day of June, 2006.

_/s/_ Jennifer M. Bush (BUS016)

Assistant Attorney General
State of Alabama
PO Box 304000
Montgomery, Alabama 36130-4000
Telephone:    334-242-9335
Facsimile:    334-242-0689
E-Mail:    jbush@dhr.state.al.us

22

## CERTICATE OF SERVICE

I hereby certify that I have served a copy of the above on al parties listed below by CMEFC or by mailing a copy of same to them on this the 16th day of June, 2006.

/s/ Jennifer M. Bush (BUS016)

Curtis C. Redding
US Bankruptcy Trustee
P.O. Box 173
Montgomery, AL 36101

Vonda S. Mcleod
Shinbaum, Abell, Mcleod and Vann
566 S. Perry Street
Montgomery, AL 36104

Teresa Jacobs
Bankruptcy Administrator
U.S. Bankruptcy Court
Frank M. Johnson Federal Courthouse Annex
One Church Street
Montgomery, AL 36104