RECEIVED

Case No. 2:2006-CV-00473-MEF

2006 JUL -5  A II: 39

IN THE UNITED STATES DISTRICT COURT FOR HACKETT, CLK
THE MIDDLE DISTRICT OF ALABAMA U.S. DISTRICT COURT
MIDDLE DISTRICT ALA

---

## THE STATE OF ALABAMA DEPARTMENT OF HUMAN RESOURCES

### Appellant,

### v.

## CLEVELAND D. BOLER, III
## EVELYN D. BOLER
## CURTIS C. REDING, CHAPTER 13 TRUSTEE

### Appellees

---

Appeal from the United States Bankruptcy Court
for the Middle District of Alabama

**BRIEF OF APPELLEES**
Cleveland D. Boler, III and Evelyn D. Boler

Vonda S. McLeod (MCL032)
Attorney for Appellees
Ricky and Vicki Brown
Post Office Box 201
Montgomery, AL 36101-0201
Telephone: 334-242-9335
Facsimile: 334-242-0689
vmcleod@samvpc.com

1

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **3**

**STATEMENT OF BASIS OF APPELLATE JURISDICTION** . . . . . . . . . . . . **7**

**STATEMENT OF ISSUES ON APPEAL** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **9**

**ARGUMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **10**

**CONCLUSION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **27**

**CERTIFICATE OF SERVICE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . **29**

# TABLE OF AUTHORITIES

## Federal Cases

In Re Aldridge, 335 B.R. 889 (Bankr.S.D.Ala.2005) . . . . . . . . . . . . . . . . . . . . . 25

In re Bloebaum, 311 B.R. 473 (Bankr. W.D. Tex. 2004) . . . . . . . . . . . . . . . . . . 13

In Re Ferguson, 134 B.R. 689 (Bank.S.D.Fla 2006) . . . . . . . . . . . . . . . . . . . . . 24

Fla. Dep't of Revenue v. Omine (In re Omine), 2006 U.S. Dist. LEXIS 8396 (M.D. Fla. Feb. 10, 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re Dew, 2006 Bankr. LEXIS 1126 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

In re Easthope, Bankr. L. Rep. (CCH) P80,482 . . . . . . . . . . . . . . . . . . . . . . . . . 18

In Re Goerg, 930 F.2d at 1566 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re Grady, 2006 Bankr. LEXIS 1121 (Bankr. N.D. Ga. June 21, 2006) 2006 Bankr. LEXIS 1121 p.8 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

In re Husmann, 276 B.R. 596, 598 (Bankr. N.D. Ill. 2002) . . . . . . . . . . . . . . . . 13

In re Jass, 340 B.R. 411 (Bankr. D. Utah 2006) . . . . . . . . . . . . . . . . . . . . . . . . 19

In re Kane, 336 B.R. 477 (Bankr. D. Nev. 2006) . . . . . . . . . . . . . . . . . . . . . . . . 21

Lamie v. United States Tr., 540 U.S. 526 . . . . . . . . . . . . . . . . . . . . . . . . . . 17, 18

In re Lang, 196 B.R. 528, 530 (Bankr. D. Az. 1996) . . . . . . . . . . . . . . . . . . . . . 13

Pontes v Cunha (In re Pontes) (2004, DC RI) 310 F Supp 2d 447. . . . . . . . . . . . 7

In Re Riggins, (N.D.Ala., 2006), Case No. 06-40015 . . . . . . . . . . . . . . . . . . 15, 25

In Re Sanders, 2006 WL 1000461 (Bank. N.D. Ala) . . . . . . . . . . . . . . . . . . . . . 26

3

In re Sosa, 336 B.R. 113 (Bankr. W.D. Tex. 2005) . . . . . . . . . . . . . . . . . . . . . . . 19

In re Walker, 2006 Bankr. LEXIS 845, 19-20 (Bankr. D. Ga. 2006) . . . . . . . . . 19

In re: State of Alabama Department of Human Resources v. Boler, Case No.2:06-CV-00473-WKW, MD Ala . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

In Re: The State of Alabama Department of Human Resources v. Sanders, Case No. 5:2006-CV-00953-IPJ, ND Ala . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

## Federal Statutes

11.U.S.C. §101 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

11. U.S. C. §103 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13,17

11 U.S.C. §362 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

11 U.S.C. §507 . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 12, 13, 15,16, 20 23,24,27

11 U.S.C.§704 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

11 U.S.C. §707 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

11 U.S.C. §726 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13, 14, 17,27

11 U.S.C. §1307 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

11 U.S.C. §1322 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 17, 24, 25,27, 28

11 U.S.C. §1325 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19

11 U.S.C. §1326 . . . . . . . . . . . . . . . . . . . . . . . . . . . 14, 15, 16, 17,20, 23 24,25,27

28 USCS §158. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## Federal Rules

Fed. R. Bankr. P. Rule 8013. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Fed. R. Bankr .P. Rule 8002 (a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## Other Authorities

A Legislative History of the Bankruptcy Abuse Prevention and Consumer Protection

Act of 2005, by Susan Jensen 79 Am. Bankr. L.J. 485, 570  . . . . . . . . . . . . . . . 21

Collier on Bankruptcy 15th Edition Rev.  . . . . . . . . . . . . . . . . . . . . . . . 13, 14, 24, 27


Constitutional Issues Posed in the Bankruptcy Abuse Prevention and Consumer
Protection Act of 2005, by Erwin Chemerinsky79 Am. Bankr. L.J. 571 . . . . . . . 21

DHR's Brief, p. 12.  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## STATEMENT OF BASIS OF APPELLATE JURISDICTION

This is an appeal of an order overruling the Appellant/Creditor's Objection to Confirmation of the Appellee/Debtor's Chapter 13 Plan issued by the United States Bankruptcy Court for the Middle District of Alabama. This appeal is being brought pursuant to 28 USCS §158. Under 28 USCS § 158, district courts have jurisdiction to hear appeals from judgments, orders, and decrees of bankruptcy court. Pontes v Cunha (In re Pontes) (2004, DC RI) 310 F Supp 2d 447.

The district court's standard of review with regard to determinations of law made by the bankruptcy court is *de novo*. See In Re Goerg, 930 F.2d at 1566; Fla. Dep't of Revenue v. Omine (In re Omine), 2006 U.S. Dist. LEXIS 8396 (M.D. Fla. Feb. 10, 2006). A district court "may affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree or remand with instructions for further proceedings. Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. *P.* 8013.

The appeal is timely filed in that the order of the Bankruptcy Court was entered April 28th, 2006 and pursuant to Rule 8002 (a) Fed. R. Bankr .P. this appeal was filed

on May 8th, 2006.[1]

---

[1] This appeal is being made concurrent with a second appeal before this Court addressing the same issue.  See In re: State of Alabama Department of Human Resources v. Boler, Case No.2:06-CV-00473-WKW.

## STATEMENT OF THE ISSUES ON APPEAL

I.      Whether under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, the Debtors' Chapter 13 Plan must provide for payment in full of a Domestic Support Obligation Pursuant to 11 U.S.C. §507(a) before any distribution can be made on other § 507(a) priorities.

II.     Whether the Debtor's Chapter 13 Plan must Limit the Distribution to Secured Creditors During the Time the Domestic Support Obligation Is Being Paid.

III.    Whether priority domestic support claims can be paid outside the Chapter 13 plan without the consent of the creditor.

**ARGUMENT**

I.     **Whether under the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, the Debtors' Chapter 13 Plan must provide for payment in full of a Domestic Support Obligation Pursuant to 11 U.S.C. §507(a) before any distribution can be made on other Section 507(a) priorities.**

The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (hereinafter "the Act") made substantial changes to title 11 of the United States Code, the basis of the substantive law of bankruptcy. This appeal seeks to interpret the effect of one of those recent changes to 11 U.S.C. §507, priority claims in bankruptcy.

*Section 507 Priority Scheme and Recent Changes under the 2005 Act*

Section 507 sets out the categories of claims that will be entitled to priority status. Prior to the 2005 Act, §507(a) provided,

"(a) The following expenses and claims have priority in the following order"

The section then designated ten different claims that were afforded priority status. First on the list of priorities was administrative expenses:

> "(1) First, administrative expenses allowed under section 503(b) of this title, and any fees and charges assessed against the estate under chapter 123 of title 28."

Spousal and child support claims were seventh (7th) in the priority scheme:

"(7) Seventh, allowed claims for debts to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record, determination made in accordance with State or territorial law by a governmental unit, or property settlement agreement, but not to the extent that such debt —

(A) is assigned to another entity, voluntarily, by operation of law, or otherwise; or
(B) includes a liability designated as alimony, maintenance, or support, unless such liability is actually in the nature of alimony, maintenance or support

The 2005 Act struck the above language and amended the priority scheme to make domestic support obligations[2] number one (1) on the priority list with the following language:

"(1) First:
(A) Allowed unsecured claims for domestic support obligations that, as of the date of the filing of the petition in a case under this title, are owed to or recoverable by a spouse, former spouse, or child of the debtor, or such child's parent, legal guardian, or responsible relative, without regard to whether the claim is filed by such person or is filed by a governmental unit on behalf of such person, on the condition that funds received under this paragraph by a governmental unit under this title after the date of the filing of the petition shall be applied and distributed in accordance with applicable nonbankruptcy law.

(B) Subject to claims under subparagraph (A), allowed unsecured claims for domestic support obligations that, as of the date of the filing

---

[2] 11.U.S.C. §101(14A) changed the definition of "domestic support obligation", however, the debtor does not dispute that the claim in question is covered by this definition.

11

of the petition, are assigned by a spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative to a governmental unit (unless such obligation is assigned voluntarily by the spouse, former spouse, child, parent, legal guardian, or responsible relative of the child for the purpose of collecting the debt) or are owed directly to or recoverable by a governmental unit under applicable nonbankruptcy law, on the condition that funds received under this paragraph by a governmental unit under this title after the date of the filing of the petition be applied and distributed in accordance with applicable nonbankruptcy law.

Under the 2005 Act, claims for administrative expenses were bumped to second priority. §507(a)(2).

### The §507 Payment Scheme Only Applies to Chapter 7 Liquidation Cases

Designating a claim as a priority claim under §507 is just the beginning. Next we must determine what being a priority creditor means. Although §507 is applicable in its entirety in chapter 7, chapter 11, chapter 12 and chapter 13 cases[3], how priority creditors are treated under each of those chapters is very different.

The status of priority claims in Chapter 7 is governed by §507's companion section, 11 U.S.C. §726 which determines when priority creditors are paid if a debtor files for Chapter 7 liquidation. Section 726 of the Bankruptcy Code is the general distribution section for liquidation cases. It dictates the order for distribution of

---

[3] 11. U. S. C. §103(a).

property of the estate that has been reduced to money by the trustee under the requirements of 11 U.S.C.§704(a)(1).    Collier on Bankruptcy 15th Edition Rev. P 726.01.

Section 726(a)(1) provides that property of the estate is first distributed in payment of timely filed claims of a kind specified in, and *in the order specified in*, section §507.   It is most important to note that although §507 is applicable in Chapter 7 and in Chapter 13 cases, §726 *only applies to cases filed under Chapter 7*.

According to 11 U.S.C. §103(b), "subchapters I and II of chapter 7 of this title apply only in a case under such chapter".   Therefore, § 726 applies directly only in cases under Chapter 7.   Collier P 103.03. Case law has failed to broaden the application of §726 to Chapter 13 cases.

In In re Lang, 196 B.R. 528, 530 (Bankr. D. Az. 1996) the Court refused to apply §726 to a Chapter 13 case when addressing a late filed claim. It stated "The goal of the distribution scheme in Chapter 7 liquidations . . . is to ensure that all parties have an opportunity to collect from the estate's limited assets. . . . In stark contrast, a Chapter 13 debtor retains the assets of the estate in exchange for an agreement to make periodic payments to the creditors . . . ".  See also In re Bloebaum, 311 B.R. 473 (Bankr. W.D. Tex. 2004) (section 726 not applicable in chapter 13); In re Husmann,

13

276 B.R. 596, 598 (Bankr. N.D. Ill. 2002) (same).

Among all the changes to the Bankruptcy Code made by the 2005 Act, there has been absolutely no change to §103(b) which would make §726 applicable in Chapter 13 cases.

Conversely, in a Chapter 13 case, status of priority claims in chapter 13 cases is not complex. Section 1322(a)(2) provides that a chapter 13 plan must "provide for the full payment, in deferred cash payments, of all claims entitled to priority under section 507", except to the extent that the holder of a particular claim agrees to a different treatment. Accordingly, a chapter 13 plan will normally provide that all priority claims are entitled to payment in full.

In contrast, there is no requirement in chapter 7 that priority claims be paid in full. Property available for distribution will be distributed in the order of priority mandated by §726 until the property has been exhausted. Collier on Bankruptcy 15th Edition Rev. P 507.02. In Chapter 13 cases, a debtor's only requirement is to pay all priority claims in full pursuant to §1322(a)(2).

While, §1322 directs what the priority creditors are paid in a Chapter 13, 11 U.S.C. §1326(b)(1) is the only section which directs when priority creditors are paid and interestingly, only administrative claims under §507(a)(1).

Prior to the 2005 Act, §1326(b)(1) read as follows:

14

> "Before or at the time of each payment to creditors under the plan, there shall be paid –
>> "Any unpaid claim of the kind specified in section 507(a)(1) of this title;

Now, the 2005 Act has amended §1326(b)(1) to read as follows:

> "Before or at the time of each payment to creditors under the plan, there shall be paid –
>> "Any unpaid claim of the kind specified in section 507(a)(*2*) of this title; (emphasis added)

It is obvious from this amendment that §507(a)(1) claims were intentionally excluded from receiving payments "before or at the time of each payment to creditors under the plan". Since there is no other provision in Chapter 13 which specifically directs how any other priority claims are to be paid and since §1326 was amended to specifically excluded domestic support obligations from being paid before other creditors, clearly, Congress did not intend to pay domestic support obligations before any other claims in Chapter 13.

Among all the changes to the Bankruptcy Code made by the 2005 Act, there has been absolutely no change to §1326 which would require domestic support obligations to be paid before any other claims.

Most importantly, this same issue has already been decided in the Northern District of Alabama. In In Re Riggins, (N.D.Ala., 2006), Case No. 06-40015, Judge

Robinson was faced with the identical argument and ruled as follow:

"The clear and unambiguous language of section 1326(b) requires plan payments be made to section 507(a)(2) administrative creditors no later than when payments are made to other creditors. So long as payments are being made while the case is pending under chapter 13, there is no requirement that priority claims, including DSO Claims, be first paid in full before disbursements to other creditors."

### Plain Meaning Interpretation

DHR argues that because there were many other changes to the Bankruptcy Code which gave domestic support obligations favorable treatment (among them substantial changes to the automatic stay provision of §362 as it pertains to child support creditors[4], new Chapter 13 provisions requiring the debtor be current with support obligations before a discharge can be granted[5] and a provision making failure to pay current child support obligations grounds for dismissal of a Chapter 13[6]), Congress "intended" for domestic support obligations to receive favorable treatment and yet, despite these major changes, DHR cannot explain why Congress failed to

---

[4] 11 U.S.C. §362(b)(2)(A)(i)-(iv)

[5] 11 U.S.C. §1325(a)(8)

[6] 11 U.S.C. §1307(c)(11)

provide that domestic support obligations be paid in full before all other claims.  In essence, DHR seeks to have the court rewrite §§ 103(b), 726, 1322 and 1326(b)(1) because it says  "(C)ongress intended for domestic support obligations to receive favorable treatment".  <u>DHR's Brief,</u> p. 12.  DHR's argument fails when the meaning of a statute is plain and unambiguous.

Courts have been instructed to strictly follow the plain language of a statute. In <u>Lamie v. United States Tr.,</u> 540 U.S. 526 the United States Supreme Court held that although a statute was awkward and even ungrammatical, it was not ambiguous and did not lead to absurd results requiring the Supreme Court to treat the text as if it were ambiguous.

> "Petitioner's argument stumbles on still harder ground in the face of another canon of interpretation. His interpretation of the Act--reading the word "attorney" in § 330(a)(1)(A) to refer to "debtors' attorneys" in § 330(a)(1) --would have us read an absent word into the statute. That is, his argument would result "not [in] a construction of [the] statute, but, in effect, an enlargement of it by the court, so that what was omitted, presumably by inadvertence, may be included within its scope." *Iselin v. United States*, 270 U.S. 245, 251, 70 L. Ed. 566, 46 S. Ct. 248, 62 Ct. Cl. 755, 1926-1 C.B. 365, Treas. Dec. Int. Rev. 3846 (1926). With a plain, nonabsurd meaning in view, we need not proceed in this way. '**There is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted.**' *Mobil Oil Corp. v. Higginbotham*, 436 U.S. 618, 625, 56 L. Ed. 2d 581, 98 S. Ct. 2010 (1978). (Emphasis added)
>
> Our unwillingness to soften the import of Congress' chosen words even if we believe the words lead to a harsh outcome is longstanding. It results

from "deference to the supremacy of the Legislature, as well as recognition that Congressmen typically vote on the language of a bill." *United States v. Locke*, 471 U.S. 84, 95, 85 L. Ed. 2d 64, 105 S. Ct. 1785 (1985) (citing *Richards v. United States*, 369 U.S. 1, 9, 7 L. Ed. 2d 492, 82 S. Ct. 585 (1962)).
Lamie v. United States Tr., 540 U.S. 526, 538 (U.S. 2004)

The Court went on to reject using legislative intent where a statute was clear.

"The starting point in discerning congressional intent is the existing statutory text, see *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438, 142 L. Ed. 2d 881, 119 S. Ct. 755 (1999), and not the predecessor statutes. It is well established that "when the statute's language is plain, the sole function of the courts--at least where the disposition required by the text is not absurd--is to enforce it according to its terms." *Hartford Underwriters Ins. Co. v. Union Planters Bank, N. A.*, 530 U.S. 1, 6, 147 L. Ed. 2d 1, 120 S. Ct. 1942 (2000) (internal quotation marks omitted) (quoting *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241, 103 L. Ed. 2d 290, 109 S. Ct. 1026 (1989) (in turn quoting *Caminetti v. United States*, 242 U.S. 470, 485, 61 L. Ed. 442, 37 S. Ct. 192 (1917)))."
Lamie v. United States Tr., 540 U.S. 526, 534 (U.S. 2004)

Following the enactment of the 2005 Act, Courts have continued to apply a plain meaning interpretation of various new code provisions even when the holding seems to be at odds with the drafter's intent and with reality. See In re Dew, 2006 Bankr. LEXIS 1126; In re Easthope, Bankr. L. Rep. (CCH) P80,482.

At least one court in the Eleventh Circuit has also refused to discount a plain meaning interpretation when interpreting the new "Means Test"[7] requirement under

---

[7] 11 U.S.C. 707(b)(2)(A)(iii)

18

the 2005 Act, holding that "many other provisions of the means test appear to operate contrary to the goal of accurately determining the amount of income that would actually be available for payments to unsecured creditors in a Chapter 13 case. The Court cannot disregard those provisions simply because they are inconsistent with reality."[8] In re Walker, 2006 Bankr. LEXIS 845, 19-20 (Bankr. D. Ga. 2006);  See also In re Grady, 2006 Bankr. LEXIS 1121 (Bankr. N.D. Ga. June 21, 2006) 2006 Bankr. LEXIS 1121 p.8 (analyzing "the statute itself" to determine whether the Debtors are required to pay the disposable income according to the CMI form or as "projected disposable income" under section 1325(b)(1)(B)).

When interpreting new language in 11 U.S.C.S. § 1325(b)(1)(B) the Court in In re Jass, 340 B.R. 411 (Bankr. D. Utah 2006) held that a court must presume that Congress acts intentionally and purposefully when it includes particular language in one section of a statute but omits it in another. [9]  The Court went on to  hold that the only measure for determining Congressional intent is "pre-BAPCPA practice." Id at 340 B.R. at 416.

---

[8] The 2005 Act has been widely criticized for being poorly drafted. See In re Sosa, 336 B.R. 113 (Bankr. W.D. Tex. 2005) (characterizing the statute as "inane" and asking if "any rational human being [can] make a cogent argument that this makes any sense at all").

[9] The Jass court attempted to look to legislative history of the 2005 Act in reaching its decision, however was unable to do so stating that the "Congressional record is largely silent because the only records available are little more than a gloss of the statutory language of the BAPCPA".

Based upon the foregoing case law, a plain meaning interpretation of the new provisions of the code does not allow enlargement of the statutes, so that what (DHR appears to argue) was omitted, presumably by inadvertence, may be included. Therefore, although domestic support obligations were moved from seventh to first priority under the 2005 Act's amendments to §507, there were no corresponding statutes added or amended which made the priority scheme applicable in Chapter 13, nor was there any change to §1326 which would require domestic support claims to be paid in full before other claims. In fact, the amendments to §1326 only supported congressional intent to keep paying administrative claims before or contemporaneously with other creditors even though administrative claims moved to second priority. Congress could have just as easily left §1326(b)(1) the way it was and domestic support obligations would have been paid before or at the same time as other creditors. They did not.

Notwithstanding the plain meaning of the statute, DHR points to a statement made by Alabama Senator Jeff Sessions at congressional hearings on the 2005 Act. The comments were made prior to the passage of the bill on April 20th, 2005. Prior to April 20th, Congress heard testimony from no less than eight law professors and

20

corporate representatives[10]. Its legislative history had stretched over almost a decade and weathered many world events.[11]    Despite the fact that a number of years and numerous economic and political events had occurred in the intervening period, testimony before Congress was that the bill did not need to be changed.  Consider the testimony of Professor Todd J. Zywicki, Visiting Professor of Law at Georgetown University Law Center cited here by the Hon. Bruce A. Markell in In re Kane, 336 B.R. 477 (Bankr. D. Nev. 2006)

> "**SENATOR FEINGOLD**: What about my question?  Are there any changes to the bill that need to be made at all or is it exactly the way it should be?  We are making (sic) this thing up next week.  This is it.  The

---

[10]Witnesses who testified were Kenneth Beine on behalf of CUNA; Maria Vullo, a partner with the New York law firm of Paul, Weiss, Rifkind, Wharton & Garrison LLP; Malcom Bennett on behalf of the National Multi Housing Council/National Apartment Association; Philip Strauss on behalf of the National Child Support Enforcement Association; Dave McCall on behalf of the United Steel Workers of America, AFL-CIO; R. Michael Stewart Menzies, Sr. on behalf of the Independent Community Bankers of America; Prof. Elizabeth Warren, Leo Gottlieb Professor of Law at Harvard Law School; and Prof. Todd J. Zywicki, Visiting Professor of Law at Georgetown University Law Center. A Legislative History of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, by Susan Jensen 79 Am. Bankr. L.J. 485, 570.  Interestingly, no representative of the consumer debtors' bar was included in this list.

[11] Constitutional Issues Posed in the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, by Erwin Chemerinsky79 Am. Bankr. L.J. 571;  A Legislative History of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, by Susan Jensen 79 Am. Bankr. L.J. 485 ("Congressional consideration of the legislation was prolonged by world events, such as the terrorist attacks that occurred on September 11, 2001, a Presidential impeachment, and an anthrax contamination resulting in the partial shutdown of the Capitol complex. Although its genesis can be traced to the formation of a commission charged by Congress with a modest mandate to review the state of the bankruptcy law and system the end product represents one of the most comprehensive overhauls of the Bankruptcy Code in more than twenty-five years.")

train is leaving the station, apparently, and there is not going to be another bankruptcy bill probably for a very long time. This is it. Should this bill be changed?

**MR. ZYWICKI**:  I believe this bill is fine as it is.

**SENATOR FEINGOLD**:   Not one word?

**MR. ZYWICKI**: There is not one word that I would change in this particular piece of legislation.

After all the substantial changes relating to domestic support obligations referenced above, after a plain view meaning of the statutes and after examining the above legislative history, it is clear that domestic support obligations were given substantially better treatment in the 2005 act, however, these claims are not entitled to be paid before any and all claims in a Chapter 13 case.

II.    **Whether the Debtor's Chapter 13 Plan must Limit the Distribution to Secured Creditors During the Time the Domestic Support Obligation Is Being Paid.**

DHR argues that §1326(b)(1) and §507(a)(1) are now in conflict and, therefore, because of this conflict it argues that the Court should look to the intent of Congress.

Examining the changes carefully we see the following:

Prior to the 2005 Act, domestic support obligations were seventh priority and with the passage of the Act they are now first priority according to the new §507(a)(1). Let us now examine the change in §1326(b)(1) within the same 2005 act.

> "Before or at the time of each payment to creditors under the plan, there shall be paid –
> > "Any unpaid claim of the kind specified in section 507(a)(2̶1̶) of this title;" (showing strikeout)

So, following DHR's reasoning, when §1326(b) was intentionally changed by Congress to intentionally exclude domestic support obligations from being paid before or at the time of each and every creditor, this change is ambiguous and cannot be reconciled with the new §507(a)(1). There is no conflict. There is no ambiguity. Before the law changed Congress preferred administrative claims. After the law changed Congress preferred administrative claims. The only conflict is the one between the Bankruptcy Code and DHR's argument.

Nevertheless, the only specific requirement addressing priority claims in

23

Chapter 13 is found in §1322(a)(2) which requires that every chapter 13 plan propose payment in full of all priority claims. Section 1322(a)(2) states that "[a Chapter 13] plan shall - provide for the full payment in deferred cash payments of all claims entitled to priority under section 507 of this title, unless the holder of a particular claim agrees to a different treatment of such claim". The Debtor does not dispute that priority creditors are required to be paid in full in a Chapter 13 plan, however, there is no requirement that any priority claims, except for fees and administrative expenses, be paid temporally in the prescribed order of priority or in advance of unsecured claims generally. <u>Collier on Bankruptcy</u> 15th Edition Rev. P 1322.03[2]. Section 1322(a)(4) states that a Chapter 13 plan shall provide for payments on any unsecured claim to be made concurrently with payments on any secured claim or any other unsecured claim.

Consider the Eleventh Circuit case of <u>In Re Ferguson</u>, 134 B.R. 689 (Bank.S.D.Fla 2006) in which the Internal Revenue Service, a priority creditor, sought to retroactively modify debtors' confirmed Chapter 13 bankruptcy plans to require debtors to pay the IRS priority tax claims in equal monthly payments starting in the first month of the plan. The Court found that absence of language directing the timing of priority tax payments is significant and begins with an analysis of §1326(b):

"This special treatment requiring payments for administrative claims to

24

begin with the first payment under the plan is not afforded to tax claims. **If the congressional intent when enacting this section was to require that monthly payments be made to the IRS from the commencement of the plan, then Congress would have specifically cited to § 507(a)(7) in the payment provision in § 1326(b)**. (Emphasis added.)

In the absence of such language in the statute and any controlling or persuasive authority supporting the government's view, this Court will not bestow this added protection to the IRS. Our opinion is based on the principle that Congress drafted the Code to provide for certain priorities. If it failed to provide for a given situation, the silence of the Code should be accorded meaning. Accordingly, this Court will interpret the Code to mean what is plain on its face instead of inferring what Congress might have written."

In addition, the Bankruptcy Court cites In Re Aldridge, 335 B.R. 889 (Bankr.S.D.Ala.2005) in which the Honorable Judge Margaret Mahoney addresses a similar argument posed to her by Marengo County DHR.[12]  In this case, the debtor owed both child support and tax debt, both priority claims under §507.  Judge Mahoney ruled that not only was there no requirement in Chapter 13 that priority claims be paid in the order set forth in §507 but that priority claims were by definition unsecured claims and as such could be paid concurrently with other creditors pursuant to §1322(a)(4).   The Northen District relied upon this case in Riggins as well.

---

[12]This case was decided before the 2005 Act was implemented, however, the changes to the laws would not have affected the Court's opinion.

Furthermore, the Debtor and the Bankruptcy Court rely upon <u>In Re Sanders</u>[13], 2006

WL 1000461 (Bank. N.D. Ala) in which DHR posed the same argument concerning

payment of domestic support obligations.  The Court in that case stated,

> "By striking the reference to § 507(a)(1) in § 1326(b)(1) and adding §
> 507(a)(2), Congress clearly intended to require the continued payment of
> administrative expenses before or contemporaneously with payments
> [**10]   to other claimholders, even § 507(a)(1) claimholders. Had
> Congress intended to afford this special payment treatment to § 507(a)(1)
> support obligations, it could have expressly done so. Congress provided
> domestic support obligations other special protections under the
> BAPCPA amendments: (1) post-petition support obligations must now
> be paid in full prior to confirmation pursuant to § 1325(a)(8); and (2)
> Chapter 13 debtors may not obtain a discharge until they certify that all
> domestic support obligations have been paid pursuant to § 1328(a).
> Congress did not, however, see fit to also require § 507(a)(1) claims be
> paid before or at the time of each payment to creditors under the plan.

> <u>In re Sanders</u>, 341 B.R. 47, 51 (Bankr. D. Ala. 2006)

---

[13] This case is presently on appeal in the Northern District of Alabama.  <u>In Re: The State of Alabama Department of Human Resources v. Sanders</u>,  Case No. 5:2006-CV-00953-IPJ

**III.    Whether priority domestic support claims can be paid outside the Chapter 13 plan without the consent of the creditor.**

The only provision in the Bankruptcy Code directing how priority creditors are to be paid is found at §1322(a)(1). It merely states that the claims must be paid in full. If the debtor's Chapter 13 plan proposes to pay priority claims in full over the life of the plan, then that plan must be confirmed. There is no requirement that priority claims be paid direct or through the Chapter 13 plan, for that matter. In fact, it is well settled in most bankruptcy districts that the plan may propose that certain payments be made directly to creditors. Section 1322(a)(1) only calls for payments through the trustee of earnings or income "as is necessary for the execution of the plan." Collier on Bankruptcy-15th Edition Rev. P 1322.02 citing In re Aberegg 961 F.2d 1307 (7th Cir. 1992). Chapter 13 plans afford debtors great flexibility in crafting their plans, provided the mandatory provisions of §1322 are met.

DHR agues that pursuant to §1322(a)(2), it can disagree with the treatment afforded their priority claims ("unless the holder of a particular claim agrees otherwise"). A cursory examination of this provision reveals that the "treatment" which this section refers to is, in fact, treating DHR as a creditor that must be paid in full through the plan. DHR's only duty under this section is to agree or not agree to be paid in full not, as DHR argues, to agree or disagree with being paid direct.

The Debtors agree with DHR that priority child support claims must be paid in full through a Chapter 13 plan, however, the Debtors cannot agree to anything more than the law allows or requires. To do so would require rewriting rules that Congress has affirmatively and specifically enacted.

## CONCLUSION

There is little doubt that the Bankruptcy Abuse Reform and Consumer Protection Act has made substantial changes to Title 11. The Act made significant changes to the Bankruptcy Code and other bankruptcy statues and will affect nearly every aspect of bankruptcy cases. DHR's appeal, however, is based upon the erroneous assumption that payment of priority claims under 11 U.S.C. §507 has now changed based upon the fact that domestic support obligations moved up the ladder to number one priority. The appeal ignores the following facts: (1) only 11 U.S.C. §726 dictates which priority creditors get paid first, (2) §726 only applies in Chapter 13 cases, and (3) that Congress did not see fit to change this procedure under the 2005 Act. The appeal further ignores 11 U.S.C §1326(b)(1) which was amended specifically to favor administrative claims over domestic support obligations notwithstanding the fact that said claims are now number one in the statutory priority scheme. The appeal seeks to further expand the drastic collection powers child support enforcement authorities are already given under the new provisions because, DHR argues, that is what Congress intended. After working on this important piece of legislation for no less than eight years with the guidance of child support enforcement agencies, it can hardly be argued that Congress "meant" to leave

§1322(b)(1) unchanged when it was, in fact, intentionally changed. DHR appears to be not seeking the Shakespearean "pound of flesh" but a "pound and a half".

The Appellee/Debtor's position is that as long as a Chapter 13 Debtor's plan provides for payment in full of domestic support obligations, the plan conforms with the requirements set out in 11 U.S.C. 1322 and must be confirmed. The Appellee/Debtor further states that there is no requirement to pay child support claims ahead of any other claim in Chapter 13, nor to require those claims to be paid through the Chapter 13 plan. To require such would require this Court to re-write the Bankruptcy Code.

Respectfully submitted this day: June 30, 2006,

/s/ Vonda S. McLeod
vmcleod@samvpc.com
VONDA S. MCLEOD
ASB-5507-D-65-V

Of Counsel:
Shinbaum, Abell, McLeod & Vann, P.C.
Post Office Box 201
Montgomery, AL 36101
(334) 269-4440

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of the above on all parties listed below by CMECF or by mailing a copy of same to them on this day: June 30, 2006.

Curtis C. Reding
Chapter 13 Trustee
Post Office Box 173
Montgomery, AL 36101

Richard G. Moxley, III
Attorney for Creditor Alabama DHR
556 South Perry
Montgomery, AL 36104

Jennifer M. Bush
Assistant Attorney General
State of Alabama
P.O. Box 304000
Montgomery, AL 36130-4000

/s/ Vonda S. McLeod